# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| BETHANY MORT, individually and on on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>MARRIOT INTERNATIONAL, INC., MARRIOTT HOTEL SERVICES, INC., AND JOHN DOE CORPORATIONS 1 – 10,<br><br>  Defendants. | § § § § § § § § § § § § § § § |

No. 3:22-cv-00164

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made and entered into by and between Bethany Mort ("Mort") on behalf of herself and the Collective Members[1] whom she seeks to represent, and opt-in plaintiff Jerome Arnold ("Arnold"), on the one hand, and Marriot International, Inc. and Marriott Hotel Services, Inc. (together, "Marriott"), on the other hand.

## RECITALS

**WHEREAS**, on March 7, 2022, Mort commenced this Action against Marriott, seeking all available relief on behalf of herself and the Collective Members under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; and

**WHEREAS**, Marriott vigorously denies any wrongdoing with respect to the subject matter of this Action and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Action; and

**WHEREAS**, uncertainty exists as to the outcome of the Action, and the nature and amount of damages, if any, owed to Mort and/or the Collective Members; and

**WHEREAS**, Marriott, while continuing to deny any liability or wrongdoing, desires to resolve this Action to avoid further litigation risks and delays and future expense, inconvenience, and interference with its ongoing business operations; and

**WHEREAS**, this Agreement reflects a compromise and settlement reached after an arms-length negotiation through well-respected wage and hour mediator Michael Russell during an all-

---

[1] Unless otherwise defined, all capitalized terms are defined in Section 2 of this Agreement.

day mediation and shall not be construed as an admission or concession by any Party as to the truth or validity of any substantive or procedural allegation, claim, or defense asserted in this or any other action or proceeding; and

WHEREAS, in connection with the Action and settlement negotiation process, Marriott's Counsel provided information regarding the Collective Members to Class Counsel concerning the claims at issue, including the nature and size of the putative collective; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Marriott in the Action and the impact of this Settlement on Mort and the Collective Members; and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Action, if not settled now, might result in a recovery that is less favorable to Mort and the Collective Members and might not occur for several years, or at all, Mort, as the Class Representative, and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Settlement is in the best interests of Mort and the Collective Members; and

WHEREAS, this Agreement is subject to and conditioned upon approval by the Court and the other conditions specified herein; and

NOW, THEREFORE, it is hereby STIPULATED and AGREED by and between the Parties that the Action is settled, subject to the Court's approval, pursuant to the following terms and conditions:

## 1.    THE CONDITIONAL NATURE OF THIS AGREEMENT

1.1    This Agreement and all associated exhibits or attachments are made for the sole purpose of settling the above-captioned Action. This Agreement and the Settlement are made in compromise of bona fide, genuinely disputed claims. Because this Action is pled as a collective action, this Agreement must receive approval by the Court. Accordingly, the Parties enter into this Agreement on a conditional basis. If the Court does not enter the Approval Order, an appellate court reverses the Court's entry of the Approval Order, and/or the Effective Date does not occur for whatever reason, this Agreement (except for those provisions relating to confidentiality, non-admissibility, and non-admission of liability) shall be deemed null and void *ab initio*; shall be of no force or effect whatsoever; and shall not be referred to or utilized for any purpose whatsoever. Further, the negotiation, terms, and entry of the Agreement shall in all circumstances remain subject to the provisions of Federal Rule of Evidence 408 and any other analogous rules of evidence that are applicable.

1.2    Marriott denies all claims as to liability, damages, penalties, interest, attorneys' fees or costs, restitution, injunctive relief, and all other forms of relief, as well as the collective allegations asserted in the Action. Marriott has agreed to resolve the Action via this Agreement, but, to the extent this Agreement is deemed void or the Effective Date does not occur and this Action were to proceed, (a) Marriott does not waive any procedural or substantive defenses, but rather expressly reserves, all rights to challenge all such claims and allegations in the Action upon

all procedural, merit, and factual grounds, including, without limitation, the ability to challenge class and collective action treatment on any grounds, as well as asserting any and all other privileges and potential defenses; (b) Marriott further does not waive any procedural or substantive right to enforce any arbitration agreements and/or class, collective and/or representative action waivers in the Action or in any other action or circumstances; and (c) Mort agrees that Marriott retains and reserves all of these rights and agrees not to take any position to the contrary; specifically, Mort agrees not to argue or present any argument, and hereby waives any argument that, based upon this Agreement, Marriott cannot contest collective action treatment on any grounds or through any means, enforce any arbitration agreements and/or class, collective and/or representative action waivers, file motions for dismissal and/or summary judgment as to any claims, and/or assert any and all other potential defenses and privileges.

       **1.3**    Neither this Agreement, nor any document referred to in it, nor any actions taken pursuant to this Agreement, is or should be construed as an admission by Marriott of any fault, wrongdoing, or liability whatsoever. Nor should the Agreement be construed as an admission that a collective action could be certified under the FLSA. There has been no final determination by any court as to the merits of the claims asserted by Mort against Marriott or as to whether this Action should be certified as a collective action.

## 2.    **DEFINITIONS**

       In addition to the terms defined elsewhere in the Agreement, the following terms shall have the meanings ascribed to them below:

       **2.1**    "Action" means the above-captioned lawsuit.

       **2.2**    "Administrative Costs" means the amount to be paid to the Claims Administrator, as approved by the Court, not to exceed $25,000 for its costs in connection with administering this Settlement, including the costs associated with sending the Notice and the Settlement Checks to the Collective Members.

       **2.3**    "Approval Motion" means the Unopposed Motion for Approval of Settlement and Dismissal of Lawsuit with Prejudice that Class Counsel shall prepare and file, subject to review and approval by Marriott.

       **2.4**    "Approval Order" means the order entered by the Court certifying the collective for settlement purposes, approving the Agreement, and dismissing the Action with prejudice.

       **2.5**    "Arnold" means Jerome Arnold who filed a notice of consent to join the Action on September 8, 2023.

       **2.6**    "Base Settlement Amount" means the gross amount of Forty Dollars and Zero Cents ($40.00).

       **2.7**    "Claims Administrator" means Rust Consulting or another third-party claims administration firm mutually-agreed upon by the Parties.

       **2.8**    "Class Counsel" means HUNTER LAW FIRM and SIMON LAW CO. and their attorneys.

**2.9** "Confidential Collective Data" means the confidential electronic data, which Marriott will in good faith compile from its records and provide to the Claims Administrator on a confidential basis, containing the following information for each Collective Member: (i) full name; (ii) last known address; (iii) social security number; (iv) whether they were a Net Underpaid Collective Member, Net Overpaid Collective Member, or Net Neutral Collective Member, and (v) if applicable, the Net Underpayment Amount.

**2.10** "Class Representative" means Bethany Mort.

**2.11** "Consent" means the mutually agreed-upon language attached at Exhibit 2, which shall be printed on each Settlement Check.

**2.12** "Collective Members" means all Current Opt-Ins and all non-exempt employees of Marriott or any of its subsidiaries who were employed in the State of Tennessee during the Kronos Outage and who Mort purports to represent in this Action.

**2.13** "Cost and Fee Award" means the award of costs and attorneys' fees of an amount not to exceed 40% of the Maximum Settlement Amount that the Court authorizes to be paid to Class Counsel from the Maximum Settlement Amount for the services provided to the Current Opt-Ins and Collective Members, including Settlement Participants.

**2.14** "Court" means the United States District Court for the Middle District of Tennessee, Nashville Division.

**2.15** "Current Opt-Ins" means Mort and Arnold.

**2.16** "Current Opt-Ins' Released Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, asserted or unasserted, in law or in equity, against Marriott or the Released Parties, or any of them, arising on or before the date of the Effective Date, including, but not limited to, claims asserted in the Action, claims relating to or arising out of the Current Opt-Ins' employment with Marriott or separation from employment with Marriott (if applicable), claims arising from actual or alleged violations of any federal, state or local law, statute, rule, ordinance, regulation, constitution, court-created or common law, and/or contracts or agreements, and including, without limitation, claims under the FLSA, which relate in any way to hours worked, wages, or compensation of any kind, including, without limitation, unpaid or late paid wages or compensation of any kind, minimum wages, overtime wages, straight time wages, bonus payments, pay statement violations, meal periods and/or rest periods, misclassification, payroll deductions, benefits, vacation pay, sick pay, liquidated or other damages, expense reimbursement, penalties of any kind (including, without limitation, late payment penalties and waiting time penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief all claims arising under Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Americans with Disabilities Act; 42 U.S.C. § 1981; the Age Discrimination in Employment Act; the Older Workers' Benefit Protection Act; the Employee Retirement Income Security Act; the Genetic Information Nondiscrimination Act; the Family and Medical Leave Act; Tennessee Human Rights Act, as amended; the Tennessee Equal Pay Law; the Tennessee Disability Act; the Tennessee Parental Leave Act; the Tennessee Wage Regulations Act; Tennessee's Plant Closing and

4

Reduction in Operations Act; the Tennessee Occupational Safety and Health Act; and any other federal, state, or local law, statute, or ordinance related to the Current Opt-Ins' employment (or, if applicable, separation from employment) with Marriott or any Released Party, or any transaction involving Marriott or any of the Released Parties. The Current Opt-Ins' Released Claims do not apply to vested rights under the Released Parties' employee benefit plans, if any, and as applicable, or to claims that the controlling law clearly states may not be released by court-approved settlement.

**2.17** "Effective Date" means the date all of the following have occurred: (1) the Court has entered the Approval Order; and (2) the judgment has become "Final." "Final" means the later of: (a) the expiration of the time for seeking rehearing and/or appeal (including any extension of time for appeal) without any such actions being taken, or (b) if rehearing, appellate review and/or extension of time for seeking appellate review is sought, 30 days after any and all avenues of rehearing appellate review, and/or extension of time have been exhausted.

**2.18** "Individual Settlement Payment" means the payment that each Collective Member shall be entitled to receive pursuant to the terms of this Agreement and will receive via a Settlement Check.

**2.19** "Kronos Outage" means the eight-week period starting on December 4, 2021 and ending on January 28, 2022.

**2.20** "Mailing Date" means the date on which the Claims Administrator mails the Notice and the Settlement Check to the Collective Members.

**2.21** "Maximum Settlement Amount" means the maximum amount that Marriott shall pay under the terms of this Agreement which is the gross amount of Three Hundred Seventy-Five Thousand Dollars and No Cents ($375,000.00). The Maximum Settlement Amount includes the Cost and Fee Award, the Service Award, Administrative Costs, and the Individual Settlement Payment to be distributed to each Settlement Participant. In no event shall the amount owed by Marriott exceed the Maximum Settlement Amount.

**2.22** "Net Neutral Collective Member" means a Collective Member who was neither underpaid nor overpaid on a net basis by Marriott during the Kronos Outage.

**2.23** "Net Overpaid Collective Member" means a Collective Member who was overpaid on a net basis by Marriott during the Kronos Outage.

**2.24** "Net Underpaid Collective Member" means a Collective Member who was allegedly underpaid on a net basis by Marriott during the Kronos Outage, but who Marriott paid in either May or June 2022 for all alleged underpayments resulting from the Kronos Outage.

**2.25** "Net Settlement Amount" means the Maximum Settlement Amount minus the Cost and Fee Award, Service Award, and Administrative Costs approved by the Court.

**2.26** "Net Underpayment Amount" means the total amount by which a Net Underpaid Collective Member was allegedly underpaid by Marriott during the Kronos Outage.

5

**2.27** "Notice" means the mutually agreed-upon notice provided to the Collective Members notifying them of the Settlement reflected in this Agreement, a copy of which is attached at Exhibit 1.

**2.28** "Negotiation Period" means the 180-day period commencing on the Mailing Date during which a Collective Member must negotiate his or her Settlement Check to become a Settlement Participant.

**2.29** "Marriott's Counsel" means MORGAN, LEWIS & BOCKIUS LLP and its attorneys.

**2.30** "Parties" means Mort, Arnold, and Marriott collectively.

**2.31** "Party" means Mort, Arnold, or Marriott individually.

**2.32** "QSF" means the Qualified Settlement Fund established by the Claims Administrator and funded by Marriott with the Maximum Settlement Amount and from which the Claims Administrator will distribute all Settlement amounts as approved by the Court.

**2.33** "Released Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities, whether known or unknown, asserted or unasserted, in law or in equity, against Marriott or the Released Parties, or any of them, arising on or before the date that the Court enters the Approval Order, asserted or which could have been asserted in the Action, or arising from or relating to actual or alleged violations of any federal, state or local law, statute, rule, ordinance, regulation, constitution, court-created or common law, and/or contracts or agreements, and including without limitation claims under the FLSA, which relate in any way to hours worked, wages, or compensation of any kind, including, without limitation, unpaid or late paid wages or compensation of any kind, minimum wages, overtime wages, straight time wages, bonus payments, pay statement violations, meal periods and/or rest periods, misclassification, payroll deductions, benefits, vacation pay, sick pay, liquidated or other damages, expense reimbursement, penalties of any kind (including, without limitation, late payment penalties and waiting time penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief. The Released Claims also include any claims for benefits arising from any Settlement Payment under this Agreement, including, but not limited to, the Employee Retirement Income Security Act ("ERISA").

**2.34** "Released Parties" mean Marriott and each of Marriott's current, former, and future affiliates, investors, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures, hotel owners, and assigns, and each of their respective past or present directors, officers, employees, partners, members, contractors, sub-contractors, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities.

**2.35** "Service Award" means the payment that the Court authorizes to be paid to Mort as the Class Representative and Arnold as a participating and engaged opt-in plaintiff in exchange for them releasing the Current Opt-Ins' Released Claims. The Service Award payable to each of Mort and Arnold shall not exceed the gross amount of Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) and shall be paid subject to an IRS Form 1099.

6

**2.36** "Settlement" means the terms, conditions, and obligations described in this Agreement.

**2.37** "Settlement Check" means the negotiable instrument issued to the Collective Members and Current Opt-Ins that promises the Settlement Payment in exchange for negotiating the Settlement Check and accepting the terms of the Consent.

**2.38** "Settlement Participants" means all Current Opt-Ins, who shall be deemed to have agreed to participate in the Settlement by filing their respective notices of consent to join the Action, and all Collective Members who opt into the Action by timely negotiating their Settlement Check during the Negotiation Period.

**2.39** "Settling Parties" means the Settlement Participants and Marriott.

## 3. RETENTION OF CLAIMS ADMINISTRATOR

**3.1** The Claims Administrator shall be responsible for administering the Settlement as detailed in this Agreement, including calculation of the Individual Settlement Payments, determination and payment of all applicable state and federal taxes, issuance and collection of all applicable tax reporting forms, creation of the QSF, distribution of the Notice and the Settlement Checks to the Collective Members as provided herein, and payment of the Cost and Fee Award to Class Counsel and the Service Awards to Mort and Arnold. The Settling Parties agree to cooperate with the Claims Administrator and assist it in administering the Settlement. The Administrative Costs shall be paid out of the Maximum Settlement Amount as approved by the Court.

## 4. STIPULATION TO COLLECTIVE CERTIFICATION AND DISMISSAL OF THE LAWSUIT

**4.1** The Settling Parties stipulate, for Settlement purposes only, that the Court may certify the Action as a collective pursuant to 29 U.S.C. § 216(b) of the FLSA.

**4.2** If, for any reason, the Court does not approve this Agreement, fails to enter the Approval Order, or the Effective Date does not occur for any other reason, Marriott shall, and hereby does, retain the right to dispute the appropriateness of collective certification. Additionally, the existence and terms of this Agreement and the stipulation for collective action certification shall not be admissible in this or any other action or proceeding for any purpose, other than to enforce the terms of this Agreement, including as evidence that: (i) any other collective should be certified or not decertified; (ii) this Action or any other action should be certified as a collective action or not decertified; or (iii) the Released Parties are liable to any of the Collective Members.

## 5. DETERMINATION OF INDIVIDUAL SETTLEMENT PAYMENTS

**5.1** The Claims Administrator shall determine the Individual Settlement Payment amounts to be included in each Collective Member's Settlement Check using the following formula. First, the Administrative Costs, Cost and Fee Award, and Service Awards will be deducted from the Maximum Settlement Amount to determine the Net Settlement Amount. Second, the Base Settlement Amount shall be allocated to each Collective Member from the Net Settlement Amount. Third, the funds remaining in the Net Settlement Amount shall be allocated

7

to the Net Underpaid Collective Members on a *pro rata* basis based on their respective Net Underpayment Amounts.

**5.2** This calculation will result in: (i) all Net Overpaid Collective Members and Net Neutral Collective Members receiving an Individual Settlement Payment equal to the Base Settlement Amount; and (ii) all Net Underpaid Collective Members receiving the Base Settlement Amount plus an additional amount based on their respective Net Underpayment Amount.

## 6. <u>TAXES</u>

**6.1** Because the Parties agree that Marriott previously made back wage payments to all Net Underpaid Collective Members and that the Individual Settlement Payments are therefore attributable to alleged liquated damages and interest, the Settlement Participants' Individual Settlement Payments shall not be subject to withholdings and deductions by the Claims Administrator, and shall be reported in the year of payment by the Claims Administrator as non-wage income to the Settlement Participants on a Form 1099 and on such other state or local tax reporting forms as may be required by law. The Claims Administrator shall be responsible for issuing the appropriate tax forms to the Settlement Participants. The Settlement Participants shall be solely responsible for the reporting and payment of their share of any federal, state, and/or local income or other taxes, if any, on the Settlement Payments.

**6.2** In the event it is subsequently determined by the IRS or any other applicable taxing authority that any Settlement Participant owes any additional taxes with respect to any payments made pursuant to this Agreement, it is expressly agreed that the determination of any tax liability is between the Settlement Participant and the taxing authority, and that none of the Released Parties will be responsible for the payment of such taxes, including any interest and penalties. The Settlement Participants hereby agree to indemnify, pay the costs of defense, and hold harmless Marriott from and against any and all claims, demands, obligations, and liabilities for such taxes, if any, for taxes owed by the Settlement Participants, including, but not limited to, taxes, levies, assessments, garnishments, fines, interest, attorneys' fees and costs owed by the Settlement Participants, if any, or incurred by Marriott.

**6.3** Marriott makes no representations as to the tax treatment or legal effect of the payments called for in this Agreement, and Mort, Arnold, and the Settlement Participants are not relying on any statement or representation by Marriott in this regard.

**6.4** The Claims Administrator will not make any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments except to the extent clearly required by law, or charity withholdings, from or with respect to the payments to Settlement Participants. Entry of the Approval Order by the Court shall be deemed authority not to make any such deductions, withholdings, or additional payments.

**6.5** Circular 230 Disclaimer. Each Party to this Agreement acknowledges and agrees that: no provision of this Agreement, and no written communication or disclosure between or among the Settling Parties or their attorneys and other advisers, is or was intended to be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31

8

CFR part 10, as amended), nor shall any such communication or disclosure constitute or be construed as such tax advice. Each Party: (i) has relied and will rely exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Agreement; (ii) has not entered into this Agreement based upon the recommendation of any other Party or any attorney or advisor to any other Party; and (iii) is not entitled to rely upon any communication or disclosure by any attorney or advisor to any other Party to avoid any tax or tax penalty. Further, no attorney or advisor to any Party has imposed any limitation that protects the confidentiality of any such attorney's or advisor's tax strategies upon disclosure by the Party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

## 7. COURT APPROVAL OF AGREEMENT

**7.1** Per the Court's September 12, 2023 Order (ECF 41), Class Counsel shall prepare and file the Approval Motion on or before September 25, 2023. Class Counsel will provide a draft of the Approval Motion to Marriott at least fourteen (14) calendar days prior to filing it for Marriott's review and will consider any proposed revisions in good faith. Marriott reserves the right to respond to the Approval Motion if necessary.

**7.2** Class Counsel further agrees to prepare and file any other documents that are needed to obtain approval of the Agreement and all exhibits to the Approval Motion and to effectuate dismissal with prejudice of the Action. A decision by the Court not to grant the Approval Motion, or a decision by the Court to enter an order granting the Approval Motion with modifications (other than modifications concerning the proposed amount of the Cost and Fee Award or the Service Award) that Class Counsel or Marriott's Counsel determines in their reasonable and good faith judgment to be material, will be discretionary grounds for Class Counsel or Marriott's Counsel to terminate this Agreement by providing written notice to the other and to the Court within fourteen (14) calendar days of receipt of the Court's decision. Prior to either Party exercising their right to terminate this agreement, the Parties agree to meet and confer in good faith, and to take all reasonable steps necessary to cure any issue raised by the Court.

**7.3** If any deadlines related to this Settlement cannot be met, Class Counsel and Marriott's Counsel shall confer and attempt to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. If the Parties fail to reach such agreement, either of the Parties may apply to the Court for modification of the dates and deadlines in this Agreement, provided that such a request to the Court may seek only reasonable modifications of the dates and deadlines contained in this Agreement and no other material changes.

## 8. CLASS DATA AND FUNDING OF THE SETTLEMENT

**8.1** Within twenty one (21) days of the Effective Date, Marriott will provide the Claims Administrator with the Confidential Collective Data.

**8.2** Within twenty one (21) days of the Effective Date, Marriott shall wire the Maximum Settlement Amount to the Claims Administrator which shall deposit it into the QSF.

**8.3** The Parties agree that: (i) the QSF shall be established pursuant to an order of the Court prior to the receipt of any monies from Marriott; (ii) the QSF shall be established to resolve

and satisfy the contested claims that have resulted, or may result, from the matters that are the subject of this Action and that are released by this Settlement; and (iii) the QSF is established and its assets are segregated and shall be segregated (within a separately established fund or account) from the assets of Marriott and all related other persons. The Claims Administrator shall be responsible for establishing, administering and otherwise operating the QSF, including the preparation and filing of applicable tax returns. **The QSF will be established and controlled by the Claims Administrator in accordance with and pursuant to Treasury Regulation § 1.468B-1, *et seq*., and subject to the terms of this Agreement and any applicable orders of the Court.**

9. **ISSUANCE OF NOTICE AND SETTLEMENT CHECKS TO THE COLLECTIVE MEMBERS**

    **9.1**    Using the Confidential Collective Data, the Claims Administrator shall issue a Notice and Settlement Check to each Collective Member (excluding the Current Opt-Ins) within twenty one (21) days of the latter of its receipt of either the Maximum Settlement Amount or the Confidential Collective Data from Marriott as described in Section 8.2. The Claims Administrator shall issue Settlement Checks directly to the Current Opt-Ins along with their Service Awards, as explained in and pursuant to Section 12.5 of this Agreement, within fourteen (14) days of receipt of the Maximum Settlement Amount.

    **9.2**    The Claims Administrator shall provide written notice to Class Counsel and Marriott's Counsel of the Mailing Date. By 7:00 p.m. Central Time on the last Friday of each month during the Negotiation Period, the Claims Administrator shall also provide Class Counsel and Marriott's Counsel with a list of the names of all Collective Members who negotiated their Settlement Check and therefore executed the Consent and became Settlement Participants during that month. Class Counsel agrees to not use the names on the lists provided by the Claims Administrator for any purpose other than as necessary to effectuate this Settlement or obtain Court approval of the Agreement. The Claims Administrator shall separately provide only Marriott's Counsel (not Class Counsel) with a list that includes the names of any Collective Members whose Notices and Settlement Checks were returned as undeliverable along with the date of remailing of any such undeliverable Notices and Settlement Checks. Within seven (7) calendar days of the close of the Negotiation Period, the Claims Administrator shall provide Class Counsel and Marriott's Counsel with a copy of all negotiated Settlement Checks and a list of names of all Settlement Participants.

    **9.3**    Any Notice or Settlement Check returned to the Claims Administrator as undelivered shall be re-mailed to the forwarding address affixed thereto. If no forwarding address is affixed, the Claims Administrator shall within seven (7) days attempt to determine a correct address by use of skip tracing or any other equivalently effective search method. If another mailing address is identified by the Claims Administrator from the search, the Claims Administrator shall remail the Notice and Settlement Check within fourteen (14) days of receiving notice that they were undeliverable in the first instance.

    **9.4**    Each Collective Member must negotiate their respective Settlement Check and in doing so agree to the Consent language contained on the Settlement Check on or before the end of the Negotiation Period to opt into the Action and become a Settlement Participant. The Current

Opt-Ins shall be deemed Settlement Participants by virtue of having opted into the Action, irrespective of whether they timely negotiate their respective Settlement Check during the Negotiation Period and the Current Opt-Ins shall be deemed to have released the Released Claims as of the Effective Date.

**9.5** Settlement Checks issued to the Collective Members pursuant to this Agreement shall remain negotiable during the Negotiation Period. Neither Marriott nor the Claims Administrator is required to re-issue any Settlement Checks to any Collective Members who fail to timely negotiate their Settlement Checks. However, Marriott reserves the right, at its sole discretion, to authorize the Claims Administrator to re-issue a Settlement Check to a Collective Member after the close of the Negotiation Period.

**9.6** At the close of the Negotiation Period, the Claims Administrator shall take all necessary steps to ensure that any Settlement Checks that remain unnegotiated are cancelled or voided immediately. The Claims Administrator shall return any remaining funds in the QSF to Marriott ("Unclaimed Funds") within ten (10) business days of the end of the Negotiation Period.

**9.7** Within ten (10) business days of the end of the Negotiation Period, Class Counsel shall file with the Court a pleading listing the names of all Settlement Participants.

## 10.   **RETENTION OF UNCLAIMED FUNDS**

**10.1** Marriott shall retain all Unclaimed Funds from the Net Settlement Amount after the issuance of the Settlement Checks and close of the Negotiation Period. The Unclaimed Funds shall remain the property of Marriott and shall be retained by Marriott and not reallocated or redistributed to Class Counsel, any Settlement Participants, or any Collective Members unless authorized in writing by Marriott.

## 11.   **RELEASES**

**11.1** Upon the Effective Date, each of the Current Opt-Ins and each of his or her heirs, representatives, successors, assigns, and attorneys, shall be deemed to have fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all Released Claims and all Current Opt-Ins' Released Claims.

**11.2** Upon negotiating a Settlement Check, each of the Settlement Participants (excluding the Current Opt-Ins) and each of his or her heirs, representatives, successors, assigns, and attorneys, shall be deemed to have opted into the Action and to have fully, finally, and forever released, dismissed, with prejudice, relinquished, and discharged all Released Claims arising on or before the date the Court enters the Approval Order.

## 12.   **PAYMENT OF THE COST AND FEE AWARD AND SERVICE AWARD**

**12.1** Class Counsel shall move for Court approval of the Cost and Fee Award in the Approval Motion. The Cost and Fee Award, if any, approved by the Court shall not be appealed by Mort or Class Counsel, and this Settlement is not contingent upon the Court's approval of the total amount of the Cost and Fee Award requested by Class Counsel. Marriott agrees not to oppose Class Counsel's requested Cost and Fee Award of up to 40% of the Maximum Settlement Amount.

Any amount of the Cost and Fee Award not approved by the Court shall be included in the Net Settlement Amount.

**12.2**     The Cost and Fee Award will compensate Class Counsel for all costs and fees incurred and all work performed in the Action as of the date of this Agreement as well as all work remaining to be performed through the Effective Date, including, but not limited to, negotiating the Agreement, securing approval of the Agreement, and obtaining entry of the Approval Order. The Claims Administrator shall issue a Form 1099 to Class Counsel for the full amount of the Cost and Fee Award and a Form 1099 shall also issue to each Settlement Participant for his or her pro-rata share of the Cost and Fee Award.

**12.3**     Within fourteen (14) days of receipt of the Maximum Settlement Amount from Marriott , the Claims Administrator will pay Class Counsel's Cost and Fee Award from the QSF and shall report to the appropriate taxing authorities on Form 1099. Payments made pursuant to this Section 12 shall constitute full satisfaction of any claim for attorney's fees or costs, and Mort and Class Counsel, on behalf of themselves and all Settlement Participants, agree that they shall neither seek nor be entitled to any additional attorneys' fees or costs under any theory.

**12.4**     Class Counsel shall move for Court approval of the Service Awards in the Approval Motion.  This Settlement is not contingent upon the Court's approval of a Service Award.  Marriott shall not oppose Class Counsel's request for approval of a Service Award of up to $7,500.00 for each Mort and Arnold.   Mort, Arnold, and Class Counsel waive the right to appeal any determination by the Court regarding the Service Award, including any determination regarding its amount.  If the Court awards less than the amount requested for the Service Award, any amount disallowed by the Court shall be included in the Net Settlement Amount.

**12.5**     Within fourteen (14) days of receipt of the Maximum Settlement Amount from Marriott , the Claims Administrator will pay Mort and Arnold their Court-approved Service Awards, provided Mort and Arnold have signed, not revoked, and are not in breach of this Agreement.  Any Service Award approved by the Court in conjunction with the Settlement shall be paid from the QSF.

**12.6**     Because the Service Awards represent payment to Mort and Arnold for their services to the Collective Members and consideration for the release of the Current Opt-Ins' Released Claims, taxes will not be withheld from the Service Awards.  The Claims Administrator will report the Service Awards on IRS Form 1099s, and any other required tax forms, and will provide said forms to Mort and Arnold and to the pertinent taxing authorities as required by law. Mort and Arnold will assume full responsibility for paying all taxes, if any, due as a result of the Service Awards and each agrees to indemnify Marriott for any such taxes owed by Mort and Arnold related to their respective Service Award.

## 13.     <u>PUBLICATION OF AGREEMENT</u>

**13.1**     Other than as required to obtain Court approval of this Agreement, Class Counsel, Mort, Arnold, and the Settlement Participants agree not to publicize in any manner this case, the Settlement, or the terms of this Agreement through any means of disclosure, electronic or otherwise.  By way of example, Class Counsel, Mort, Arnold and the Settlement Participants agree

that they will not initiate any print, newspaper, television, or radio advertisements, publications, or flyers discussing this information, and will not issue press releases, hold press conferences, engage in any press event, or respond to any press inquiries regarding the Action or this Agreement except to say only in response to direct, unsolicited press inquiries words to the effect that Class Counsel supports the settlement and thinks it is fair to the Collective Members. No further comment shall be made. After the filing of the Approval Motion, if a Collective Member contacts Class Counsel directly, Class Counsel may discuss with the Collective Member the terms of the Settlement.

## 14. <u>TERMINATION OF SETTLEMENT</u>

**14.1** Marriott shall make no payments to anyone under this Agreement in the event that any of the following occurs: (1) the Agreement is not approved in its entirety by the Court, excluding modifications concerning the proposed amount of the Cost and Fee Award or the Service Award or modifications that the Parties determine in their reasonable and good faith judgment to not be material modifications; (2) the Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms; or (3) the Effective Date does not occur. In the event of one of the above occurrences, the Parties will each bear their own costs and fees with regard to the efforts to carry out the terms of this Agreement. Further, in such event, this Agreement, except for those provisions relating to non-admissibility, non-publication, and non-admission of liability, shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Parties and it shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc.

**14.2** Marriott shall have the absolute discretionary right to terminate this Agreement and the terms set forth in this Agreement in the event that this Agreement is construed in any way that would require Marriott to pay: (i) more than the Maximum Settlement Amount; and/or (ii) any amount(s) not expressly provided for in this Agreement.

**14.3** To the extent Marriott chooses to exercise the right to terminate this Agreement, it must do so through written notice to Class Counsel prior to the Effective Date and within fourteen (14) days of Marriott learning of the occurrence of the operative condition warranting termination.

**14.4** Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amounts of or eliminating entirely the Cost and Fee Award or Service Awards shall constitute grounds for cancellation or termination of this Agreement or grounds for limiting any other provisions of the Agreement.

## 15. <u>MISCELLANEOUS PROVISIONS</u>

**15.1** Marriott's only obligations to Class Counsel, Mort, Arnold, and the Collective Members are set forth in this Agreement.

**15.2** This Agreement compromises claims that are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense. The Parties agree that the amounts paid in connection with this Agreement and

the other terms of the Settlement were negotiated in good faith by the Parties and reflect an Agreement that was reached voluntarily after consultation with competent legal counsel.

    **15.3**    The Released Parties specifically and generally deny any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the Action and make no concessions or admissions of liability of any sort. Neither this Agreement nor any act performed, or any document executed pursuant to, or in furtherance of, this Agreement is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims or the wrongdoing or liability of the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal for any reason.

    **15.4**    Class Counsel warrant and represent that no other law firms or attorneys are serving in any capacity as Class Counsel. Class counsel further warrant and represents that, other than the Current Opt-Ins, they have no clients who are current or former Marriott employees who have or intend to assert claims against any of the Released Parties and that they have not had any contact with any Collective Members, other than the Current Opt-Ins, since the inception of the Action. The Parties agree that nothing in this agreement between the Parties shall be construed as or act as a restriction of Class Counsel (and any firm for which they are associated) to practice law in accordance with their respective state rules of professional conduct.

    **15.5**    This Agreement, along with the exhibits hereto, constitutes the entire agreement between the Parties regarding the subject matter discussed herein, and no representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized herein. Except as otherwise explicitly provided herein, each Party shall bear its own fees and costs.

    **15.6**    Class Counsel, on behalf of the Settlement Participants, represents that, after consultation with and approval of the Class Representative, it is expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Class Representative pursuant to this Agreement to effect its terms, and is also expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Participants that it deems appropriate. Marriott represents that it is expressly authorized to take all appropriate action required or permitted to be taken by Marriott pursuant to this Agreement to affect its terms, and also is expressly authorized to enter into any modifications or amendments to this Agreement on behalf of Marriott that it deems appropriate.

    **15.7**    This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

    **15.8**    Whenever this Agreement requires or contemplates that a Party or the Claims Administrator shall or may give notice to a Party, notice shall be provided by e-mail and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

    (i) If to Marriott, then to:

Lincoln O. Bisbee
Morgan, Lewis & Bockius LLP

101 Park Avenue
New York, New York 10178
Lincoln.Bisbee@morganlewis.com

and

T. Cullen Wallace
Morgan, Lewis & Bockius LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Cullen.Wallace@morganlewis.com


      (ii)  If to Class Counsel, then to:

Anne Bennett Hunter
Hunter Law Firm
101 Creekside Crossing
Suite 1700-307
Brentwood, TN 37027
anne@hunteremploymentlaw.com

and

James L. Simon
Simon Law Co.
11 ½ N. Franklin Street
Chagrin Falls, OH 44022
James@simonsayspay.com


**15.8**  All Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing this Agreement.  Any action to enforce this Agreement shall be commenced and maintained only in this Court, unless the Parties mutually agree to another jurisdiction.

**15.9**  This Agreement shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of Tennessee, and the rights and obligations of the Settling Parties shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of Tennessee without giving effect to Tennessee's choice of law principles.

**15.10**  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of this

15

Agreement are contractual and are the product of arms-length negotiations between the Parties and their respective counsel. Each Party and their counsel cooperated in the drafting and preparation of this Agreement.

**15.11** Mort and Arnold represent that they have no claims against Marriott or any of the other Released Parties that are not covered by the Current Opt-Ins' Released Claims.

**15.12** Neither Class Counsel nor any other attorneys acting for, or purporting to act for, the Collective Members and Current Opt-Ins may recover or seek to recover any amounts for attorneys' fees, costs, awards, or other disbursements from the Maximum Settlement Amount or otherwise from the Released Parties except as expressly provided herein.

**15.13** This Agreement may not be changed, altered, or modified, except in writing signed by the Current Opt-Ins, Class Counsel, and Marriott. This Agreement may not be discharged except by performance in accordance with its terms or by a writing used by the Parties.

**15.14** Paragraph titles or captions contained in this Agreement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement, or any provision thereof.

**15.15** If a deadline provided for under this Agreement falls on a Saturday, a Sunday, or a holiday, the deadline will be the next business day that is not a Saturday, Sunday, or holiday. If the Claims Administrator is unable to complete any required actions by the deadlines set forth in this Agreement, the Parties agree that the Claims Administrator shall have the authority to propose new deadlines as applicable and necessary and the Parties shall not unreasonably withhold consent to any such proposals.

**15.16** The Parties agree that the Court shall stay all proceedings in the Action, except such proceedings necessary or appropriate to implement and complete the Settlement.

**15.17** The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or conditions. Moreover, it shall not be a waiver of such Party's right thereafter to enforce each and every term and condition of this Agreement.

**15.18** This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

## 16. <u>DESTRUCTION OF ALL DOCUMENTS AND OTHER DISCOVERY</u>

**16.1** No materials or information, including electronic information or documents, other than materials or information that are in the public domain, provided by Marriott to Class Counsel or the Class Representative during the course of the Action or during the settlement of the Action shall not be disseminated or distributed to any third party or entity by the Class Representative or Class Counsel. All originals or reproductions of any discovery materials obtained from Marriott and/or given to any Party, expert, consultant, or other person, whether in hard copy or electronic form shall be retrieved by Class Counsel and destroyed, and Class Counsel shall certify within thirty (30) calendar days of the Effective Date that it has destroyed all such hard copy and

electronic documents or information and all copies thereof.

**IN WITNESS WHEREOF**, the Current Opt-Ins, Class Counsel, and Marriott indicate their intent to be fully bound by the terms of this Agreement by signing in the spaces provided below:

Dated: _____  Sep 22, 2023

_____
Bethany Mort (Sep 22, 2023 16:27 CDT)
Bethany Mort

Dated: _____  Sep 22, 2023

_____
Jerome Arnold IV (Sep 22, 2023 17:41 CDT)
Jerome Arnold

Dated: _____

_____
For Marriott International, Inc. and
Marriott Hotel Services, Inc.

APPROVED AS TO FORM AND CONTENT:

Dated: _____  Sep 22, 2023

_____
James Simon (Sep 22, 2023 20:15 EDT)
James Simon
Simon Law Co.
Class Counsel

Dated: _____  Sep 22, 2023

_____
Anne Hunter (Sep 22, 2023 19:11 CDT)
Anne Hunter
Hunter Law Firm
Class Counsel

Dated: _____  Sep 25, 2023

_____
Lincoln Bisbee
Morgan, Lewis & Bockius LLP
Marriott's Counsel

**EXHIBIT 1**

**NOTICE OF SETTLEMENT**

***Mort v. Marriott International, Inc. et al.,*** No. 3:22-cv-00164
**United States District Court, Middle District of Tennessee, Nashville Division**

**TO:** All current and former hourly, non-exempt employees of Marriott International, Inc., Marriott Hotel Services, Inc. (together, "Marriott"), or any of Marriott's subsidiaries who were employed in the State of Tennessee from December 4, 2021 to January 28, 2022 ("Collective Members").

**Collective Members who participate in the Settlement are eligible to receive a payment from the Settlement described in this Notice of Settlement ("Notice").**

**Please read this Notice carefully. Your rights and options – and the deadlines to exercise them -- are explained in this Notice.**

| | |
|---|---|
| **1.** | **Why did I get this Notice?** |

You received this Notice because Marriott's records identify you as a Collective Member, as that term is described above.

The purpose of this Notice is to explain the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

| | |
|---|---|
| **2.** | **What is the Lawsuit About?** |

Bethany Mort ("Mort") filed this lawsuit against Marriott in Federal District Court in Nashville, Tennessee ("Court") on March 7, 2022 (the "Lawsuit"). Mort alleged in the Lawsuit that Marriott failed to pay her and the Collective Members for all hours worked during the Kronos Outage in violation of a federal statute known as the Fair Labor Standards Act ("FLSA"). The "Kronos Outage" was the eight-week period from December 4, 2021 to January 28, 2022, during which the cloud-based timekeeping system Marriott uses (referred to internally as ATLAS), which is provided by the Ultimate Kronos Group ("Kronos"), was unavailable due to a ransomware attack.

Marriott denies the allegations in the Lawsuit and maintains that it has fully complied with the FLSA in all respects, including by promptly paying all employees for all hours worked during the Kronos Outage, which was unforeseeable and beyond Marriott's control. This Settlement is not an admission of any wrongdoing by Marriott or an indication that any law was violated and there has been no finding by any court that Marriott has violated the law.

Mort and Marriott (together, the "Parties") have entered into the Settlement and the Court has approved their Settlement Agreement and Release ("Settlement Agreement").

| 3. | What is a collective action? |
|---|---|

You are being informed of this Settlement because you are eligible to participate as a Collective Member and receive an Individual Settlement Payment under the terms of the Settlement Agreement. If you do not wish to participate, you do not have to do so.

A collective action under the FLSA is a lawsuit in which one or more persons acting as representatives sue on behalf of other persons who allegedly have similar claims. When the court certifies the case as a collective action, other similarly situated individuals, usually current and former coworkers, are invited to join the collective action, if they wish. Here, if you wish, you will opt-in to the collective action and become a Settlement Participant when you sign the back of the enclosed Settlement Check and cash or deposit it. By cashing or depositing your check and opting-in to the collective action, you will be releasing the Released Claims (defined in Section 7 below).

| 4. | Why is there a Settlement? |
|---|---|

The Court has not decided in favor of Mort, or in favor of Marriott. There was no trial in this Lawsuit, and no findings by the Court. Instead, both sides agreed to a no-fault Settlement of the Lawsuit.

***The Settlement is a compromise***. It allows the Parties to avoid the costs and risks of further litigation and provides money to Mort and other Collective Members.

In reaching this Settlement, Marriott has not admitted that it violated any laws. On the contrary, Marriott continues to assert that its pay practices during the Kronos Outage were legal.

| 5. | What does the Settlement provide? |
|---|---|

Under the Settlement Agreement, Marriott agreed to pay a maximum settlement amount not to exceed $375,000 (the "Maximum Settlement Amount"). The Maximum Settlement amount will be allocated to Collective Members, Class Counsel, and the Claims Administrator.

Each Collective Member's Individual Settlement Payment will be calculated by the Claims Administrator using a formula based on factors including: (i) whether you were on a net basis allegedly underpaid, overpaid, or paid the correct amount during the Kronos Outage; and (ii) if you were allegedly underpaid, the amount of any alleged net underpayment.

Because Marriott has already paid in full on a net basis all employees who were allegedly underpaid during the Kronos Outage, your entire Individual Settlement Payment will be treated as liquidated damages and interest (meaning, non-wages) for tax purposes. This means the gross amount you receive will not be subject to payroll taxes or any similar withholdings.

If you have any questions or concerns about the determination of your Individual Settlement Payment, please contact the Claims Administrator. The Claims Administrator's contact information is:

[Insert contact info]

| 6. | How can I receive a Settlement payment? |
|---|---|

Your Settlement Check is enclosed with this Notice. You must endorse and cash or deposit the Settlement Check within one hundred and eighty (180) days ("Negotiation Period") of it being issued to you. If you fail to cash or deposit your Settlement Check during the Negotiation Period, it will be voided, and you will not be entitled to any payment under the Settlement.

| 7. | What do I give up by timely cashing or deposing my Settlement Check? |
|---|---|

In exchange for timely endorsing and cashing or depositing your Settlement Check, you will have agreed to join the Lawsuit against Marriott and to release all Released Claims arising on or before the date you cashed or deposited your Settlement Check against all Released Parties.

"Released Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities arising on or before [INSERT DATE OF APPROVAL ORDER], whether known or unknown, asserted or unasserted, in law or in equity, against Marriott or the Released Parties, or any of them, asserted or which could have been asserted in the Action, or arising from or relating to actual or alleged violations of any federal, state or local law, statute, rule, ordinance, regulation, constitution, court-created or common law, and/or contracts or agreements, and including without limitation claims under the FLSA, which relate in any way to hours worked, wages, or compensation of any kind, including, without limitation, alleged unpaid or late paid wages or compensation of any kind, minimum wages, overtime wages, straight time wages, bonus payments, pay statement violations, meal periods and rest periods, misclassification, payroll deductions, liquidated or other damages, expense reimbursement, penalties (including late payment penalties and waiting time penalties), premium pay, interest, attorneys' fees, litigation costs, restitution, or other compensation and relief. The Released Claims also include any claims for benefits arising from any Settlement Payment under this Agreement, including, but not limited to, the Employee Retirement Income Security Act ("ERISA").

"Released Parties" mean Marriott and each of Marriott's current, former, and future affiliates, investors, parents, subsidiaries, related entities, predecessors, successors, divisions, joint ventures, hotel owners, and assigns, and each of their respective past or present directors, officers, employees, partners, members, contractors, sub-contractors, employee benefit plan administrators and fiduciaries, trustees, principals, agents, insurers, co-insurers, re-insurers, managers, shareholders, attorneys, and personal or legal representatives, in their individual and corporate capacities.

If you have any questions about the nature and scope of the claims you are releasing by participating in this Settlement, please call the law firm listed in Section 9 below and ask to speak with Class Counsel handling the Lawsuit.

| 8. | What if I do not cash or deposit my Settlement Check? |
|---|---|

If you do not endorse and cash or deposit your Settlement Check during the Negotiation Period, you will not join the Lawsuit and you will not release, and will retain, any claims against Marriott.

| 9. | **Do I have a lawyer?** |
|---|---|

The Court has appointed the **Hunter Law Firm,** 101 Creekside Crossing, Suite 1700-307, Brentwood, Tennessee 37027; Phone **(615) 592-2988**, and the **Simon Law Co.,** 11 ½ N. Franklin Street, Chagrin Falls, Ohio 44022; Phone **(216) 816-8696** as Class Counsel for the Collective Members. Lawyers from these firms will answer your questions about the Lawsuit and Settlement free of charge and in strict confidence. If you call, please identify yourself as a "Collective Member" in the "Marriott Wage Lawsuit" and ask to speak with one of the assigned lawyers.

You do not need to retain your own attorney in order to participate in the settlement. However, if you want to be represented by your own lawyer, you may hire one at your own expense.

| 10. | **How do the lawyers get paid?** |
|---|---|

The law firm identified in Section 9 above have worked on this Lawsuit to date without being paid. Under the Settlement, the Court approved legal fees and expenses of $_____. This represents approximately _____ of the total $375,000 value of the settlement. You will ***not*** pay any legal fees or expenses out of your Individual Settlement Payment.

| 11. | **How do I obtain more information?** |
|---|---|

This Notice summarizes the Settlement Agreement. For the precise terms and conditions of the Settlement or to review a copy of the Settlement Agreement, please contact the Claims Administrator or Class Counsel.

**PLEASE <u>DO NOT</u> TELEPHONE THE COURT OR THE CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

| 12. | **Additional Important Information** |
|---|---|

**A.** **Your Settlement Check <u>must be cashed or deposited</u> soon after receipt**. You will have 180 days to cash your Settlement Check. If your Settlement Check is lost or misplaced, you should immediately contact the Claims Administrator to request a replacement.

**B.** **Marriott will not retaliate against any individual for participating in this Settlement.**

**EXHIBIT 2**

On the back of each Settlement Check distributed to the Collective Members, the following language will appear in the endorsement section:

> By endorsing and negotiating this check and accepting payment: (a) I fully accept and agree to opt-in and become a Settlement Participant in the case styled *Bethany Mort v. Marriott International, Inc.*, No. 3:22-cv-00164 in the United States District Court, Middle District of Tennessee, Nashville Division; (b) I agree to be bound by the terms and conditions of the Settlement Agreement entered into and executed by Bethany Mort, the Class Representative, on my behalf, including my release of claims contained in that Settlement Agreement and explained in the Notice of Settlement I received with this check; and (c) I represent that I was advised of my right to review a copy of the Settlement Agreement and had an opportunity to do so to the extent so desired.

# MORT; SETTLEMENT AGREEMENT (FINAL); 9-22-23

Final Audit Report                                                    2023-09-23

| | |
|---|---|
| Created: | 2023-09-22 |
| By: | James Simon (james@simonsayspay.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAGiVuKMtPrSGwo6rCMmhhXqsdpLT6XOv7 |

## "MORT; SETTLEMENT AGREEMENT (FINAL); 9-22-23" History

Document created by James Simon (james@simonsayspay.com)
2023-09-22 - 8:45:06 PM GMT

Document emailed to simplebethmarie@gmail.com for signature
2023-09-22 - 8:48:59 PM GMT

Email viewed by simplebethmarie@gmail.com
2023-09-22 - 9:22:53 PM GMT

Signer simplebethmarie@gmail.com entered name at signing as Bethany Mort
2023-09-22 - 9:27:56 PM GMT

Document e-signed by Bethany Mort (simplebethmarie@gmail.com)
Signature Date: 2023-09-22 - 9:27:58 PM GMT - Time Source: server

Document emailed to jeromearnoldiv@gmail.com for signature
2023-09-22 - 9:28:00 PM GMT

Email viewed by jeromearnoldiv@gmail.com
2023-09-22 - 10:37:44 PM GMT

Signer jeromearnoldiv@gmail.com entered name at signing as Jerome Arnold IV
2023-09-22 - 10:41:38 PM GMT

Document e-signed by Jerome Arnold IV (jeromearnoldiv@gmail.com)
Signature Date: 2023-09-22 - 10:41:40 PM GMT - Time Source: server

Document emailed to Anne Hunter (anne@hunteremploymentlaw.com) for signature
2023-09-22 - 10:41:41 PM GMT

**Adobe Acrobat Sign**

Email viewed by Anne Hunter (anne@hunteremploymentlaw.com)
2023-09-23 - 0:11:37 AM GMT

Document e-signed by Anne Hunter (anne@hunteremploymentlaw.com)
Signature Date: 2023-09-23 - 0:11:55 AM GMT - Time Source: server

Document emailed to James Simon (james@simonsayspay.com) for signature
2023-09-23 - 0:11:56 AM GMT

Email viewed by James Simon (james@simonsayspay.com)
2023-09-23 - 0:14:55 AM GMT

Document e-signed by James Simon (james@simonsayspay.com)
Signature Date: 2023-09-23 - 0:15:49 AM GMT - Time Source: server

Agreement completed.
2023-09-23 - 0:15:49 AM GMT